Harper, Ch.
Ralph Bailey, deceased, by his will executed in 1798, devised as follows: “Item: I give and bequeath unto my beloved sons, Benjamin Bailey, John Splatt Bailey, Henry Bailey, Ralph Bailey, Edward Bailey, Charles Bailey, William Eberson Bailey, and the child my wife is now pregnant with, (if male,) all my lands that I now possess, to be equally divided between them, and the heirs of their bodies ; Item : if either of my said sons should depart this life, leaving no lawful issue of his body, then and in that case, it is my will and desire, in particular, that his or their share of my lands, so dying, shall be for the surviving brothers or brother, and their or his heirs.”
The bill charges that complainant, who is the eldest of the sons of Ralph Bailey mentioned in the will, has made a contract with the defendant, for the sale of the land which he acquired under his father’s will, and has tendered a conveyance in pursuance of his contract, which defendant declines to accept, on the alleged ground of complainant’s inability to make a good title in fee simple. Complainant has several children living. The answer admits the facts stated, and declares defendant’s readiness to perform his contract, provided the Court shall determine, that under the terms of his father’s will, complainant can convey a good title in fee simple.
It is not doubted, that the devise to the testator’s sons and the heirs of their bodies, to be equally divided, makes them tenants in common, and would, in England, give them an estate tail, under the statute de donis ; nor that with us, where the statute *420 has not been adopted; the words give a .fee simple conditional at the common law. . The existence of this estate has been repeatedly recognized by our Courts. If these words stood alone, there could be no doubt that the .complainant, who has issue living, might alienate and bar the issue and the reversion or possibility of reverter, and consequently make a good title to the defendant. The doubt'arises from the subsequent limitation to the surviving .brothers, in the event of either’s dying without leaving issue. The question is,’ whether this is a good limitation by way of executory devise, and restrains the devisee from alienating until the contingency is determined. It was argued that it is so,.because the words leaving.issue do not import an indefinite failure of issue, but relate to issue living at the death of the first taker, and also because the limitation to the surviving brothers shows it was intended to take effect during lives in being, .and therefore it is within the limit of the rule against perpetuities.
There is no doubt, but if personal property be given by will, or real property be given in,fee, it may be limited over by way' of executory devise, on, any event within the prescribed limit as to time ; and such an event may be the first taker’s ’dying without issue then living. , To this effect are the well-known cases of Pells vs. Brown, Cro. Jac. 590; Gulliver vs. Wickett, 1 Wils. 105, and Doe vs. Wetton, 2 Bos. &. Pull. 324. There is no doubt, but that, if personal property be limited over on the event of not leaving issue, the word leaving is sufficient to restrict the failure of issue to the time of the death,.' This is said to be the natural''import -of the, words, and it seems to me obvious enough that it is so. A limitation to survivors, is also sufficient, either in the case of personal estate' or land given in fee, to show that' by a devise on the event of dying without issue, is not meant an indefinite failure of issue, but' that the limitation is fio take effect within lives in being. Hanbury vs. Cockerel, 1 Roll. Ab. 835; cited, Butler’s Fearne, 396; and Hughes vs. Sayer, 1 P. Wms. 534.'' The case of Porter vs. Bradley, 3 T. R. 143, is an authority, that if land be given in *421 fee and limited over on the event of not leaving issue, this means issue living at the death, and is a good executory devise. This case, or rather dictum of the Judge who decided it, has been the subject of a good deal of criticism ; but it seems to me, to be supported by strong argument and authority.
It appears to me, however, that in England, after an estate tail given, there can be no executory devise, depending on the event of the first taker’s dying without leaving issue or children then living ; no matter b.y what words the intention may be expressed. The reason seems obvious enough ; though it does not appear to be very clearly expressed in the cases. Such a limitation does not fall within any definition of an executory devise, but is clearly and to all intents and purposes a contingent remainder. An executory devise, according to Fearne, is such a limitation of a future estate or interest in lands or chattels, as the law admits in the case of a will, though contrary to the rules of limitation in conveyances at common law. In the case of lands, the limitation, as is elsewhere fully explained, must be, either to take place in abridgment of the preceding estate, (as when the fee is given and limited over on the event of the first taker’s dying without issue then living) or must be limited to arise in future, (as where the estate is suffered to descend to the heir at law till the contingency is determined) not being expectant on the determination of a preceding estate of freehold. Mr. Fearne observes, with respect to an executory devise, “it is only an indulgence allowed to a man’s last will and testament, where otherwise the words of the will would be void ; for wherever a future interest is so limited by devise, as to fall within the rules above laid down for the limitation of contingent remainders, such an interest is not an executory devise, but a contingent remainder.” He refers to the case of Purefoy vs. Rogers, 2 Saund. 280, in which Lord Chief J us-tice Hale lays down the rule thus : “Where a contingency is limited to depend on an estate of freehold, which is capable of supporting a remainder, it shall never be construed to be an ex-ecutory devise, but a contingent remainder only, and not other *422 wise.” Sergeant Williams, in his note to the case, note 9, p. 288, refers to the cases in which this rule has been recognized, and particularly to Doe vs. Morgan, 3 T. R. 763, in which Lord Kenyon said, that if ever there existed a rule respecting executory devises, which had uniformly prevailed, without any exception to the contrary, it was that which was laid down by Lord Hale, in the case of Purefoy vs. Rogers. Now I suppose it cannot be doubted that an estate tail is an estate of freehold, and capable of supporting a remainder; that the death of the first tenant in tail, without issue then living, is a regular determination of such estate; that the interest which is limited over oh that event, is expectant on such determination, or that such a limitation would be good in a conveyance at common law.
I think I may venture to assert, that in the infinite number of English cases, not one can be found in which such a limitation, after an estate tail, has been supported as an executory devise, however strongly the intention may have been expressed. In the case of Edgar vs. Driver, Cowp. 379, the testator devised lands to his daughter and the heirs of her body lawfully begotten ; and if she should die without leaving children or child, living at her decease, the estate should be void as to the inheritance of heirs, and should go to the testator’s heir male and his heirs male. The daughter suffered a recovery, devised the estate, and died without children, and the question was, whether this recovery had barred the limitation to the testator’s heir male. It was held to have done so, on the ground of its being a remainder expectant on the estate tail; for it is of the essence of an executory devise that it is incapable of being barred till the contingency is determined. It was said, in argument in the case, that there can be no executory devise after an estate tail; perhaps this position might be questioned ; but I think it pretty clear that there can be none on the event of the first tenant’s dying without issue. Fearne, after citing this case and that of Fountain vs. Gooch, which are quoted by Lord Mansfield, and observing that conditional or executory limitations, depending on estates tail, may always be barred by a recovery suffered *423 before the contingency is determined, adds : “ But however the expression, in cases of this sort, may wear the complexion of conditions, or conditional limitations, they seem, in fact, not to differ from remainders; as they are taken up from an event which is, in itself, a regular determination of the estate tail, viz. the death of the tenant in tail without leaving issue then living, so that the express declaration, that the estate tail shall cease, determine or become void in such event, being no more than what is involved in the very nature of the estate itself, is in strictness perhaps a mere nullity. And the ulterior limitation not operating in any degree to abridge or interfere with the estate tail, or accelerate its determination, may well be considered as a remainder ; not vested, indeed, because confined only to the event of the estate tail determining by the decease of the tenant in tail leaving no issue then living, but contingent on the expiration of the estate tail by that event. And this will, in some measure, account for an observation by the Court in the said case of Fountain vs. Gooch, that the words ‘and for want of such issue, the son to have but an estate during his natural life,’ was no more th.an the law implied, for that if tenant in tail have no issue, it resolves into an estate for life.”
This view of the subject, I think, will reconcile the case of Porter and Bradley, with Forth and Chapman, and the other cases with which it has been supposed to be at variance, and serves to explain the dictum of Lord Kenyon which has been the subject of censure. In Forth and Chapman, the testator gave real and personal estate to his nephews generally, and if either should die without leaving issue of their respective bodies, to a third person. The Lord Chancellor thought it might be reasonable enough to take the same word in different senses, as to the two different estates ; and that as to the freehold estates, the construction should be, if the nephews died without issue generally, and as to the leasehold, the same wordii might be construed to mean a dying without leaving issue at their death. Now we are to observe, that in the devise to the nephews, there was no limitation to heirs or issue, and if it had stood alone, *424 'would have given, them only an estate for life. But it was plain that a benefit was 'intended to the issue, as the estate was limited over for want of issue. They could not take as purchasers ; and therefore, of..necessity, to effectuate the testator’s intention, the nephews were construed to take an. estate tail which was descendible to issue. \ But construing it an estate tail, it was necessary to construe the words leaving issue, to import an indefinite failure of.issue. For the reasons I have mentioned before; the limitation over was a remainder expectant on the determination of the estate tail. But being such remainder,- it seems to me that the words must necessarily import an indefinite failure of issue. I am- not aware of any English case,- or principle of law, which would authorize the notion of two remainders, or a remainder and reversion expectant on the same estate tail, accordingly as-the estate shall terminate by one or another event; though two remainders may be limited as substitutes or alternatives for each other, on the same event. Lord Coke observes (Co. Litt; 20) that the Judges, after the sta.tute.de donis, in execution of the will of -the donor, “ adjudged that the donee should not have a. fee simple; but divided the estate, • and' created a' particular estate in the donee and a, reversion in the donor; so as where the donee had a fee simple before, by this Ac.t he had but an estate tail, and where the donor had but a possibility before, which after issue might be barred at the pleasure of the donee, now, by construction upon, this Act, 'the donor had the fee simple' expectant upon the estate tail, which we call the reversion.” The whole fee is divided into the estate tail aiid the reversion, and the creation of a remainder is a grant of the reversion. - If 9. grant were to A. and the heirs, of his body, and on failure of his issue to B., this would be a vested remainder in B.: the fee would be in him. ‘ But if it were further provided, that if A. should die without • children living at the time of his death, then the remainder should be to C. and his heirs, it is plain this limitation. could' not take effect as a\ contingent remainder or an executory devise. Not as a contingent remainder ; because it could only have effect by divesting the' fee sim- *425 pie already vested in B.: nor as an executory devise ; because it was limited and expectant on the regular determination of a preceding estate of freehold. So it would bl if the reversion remained in the donor. I take it, therefore, to be a matter of absolute necessity, if the words are to have any effect at all, that when an estate tail is given, and limited over on the event of the first taker’s dying without issue or children, this shall be construed a remainder expectant, generally, on the determination of the estate tail, and the words, “ leaving issue” or “ leaving children living at the'time of his death,” or any similar words, to import an indefinite failure of issue.
In the case of Porter & Bradley, the devise was to the testator’s son and his heirs and assigns foreverwhich plainly gave a fee simple. The limitation over was on the event of the son’s dying without leaving issue behind him; It was in reference to the words “ leaving issue” in this case, that Lord Kenyon uttered the dictum, which has been the subject of censure, that “it would be very strange if these words had a different meaning when applied to real and personal property,” and which Lord Eldon, in Crooke vs. De Vandes, 9 Ves. 203, supposed to be inconsistent with Forth and Chapman. But if we confine the dictum of Lord Kenyon to the case of lands given in fee, the inconsistency vanishes. Lands no doubt may be given in fee, and limited over, by executory devise, on the first tenant’s dying without issue then living. If, as is said in many cases, and as seems clear, the natural import of the words “ leaving issue,” is issue living at the time of the death, there is no conceivable reason why their meaning 'should not be the same when applied to a devise of land in fee simple or of personal estate. But as we have seen, there is ample reason, when they are used after the devise of an estate tail; because they have no effect at all, unless they were intended to import an indefinite failure of issue. If, therefore, we understand Lord Macclesfield, when he says, in Forth & Chapman, the words have a different meaning when applied to real and personal estate, to refer to real estate given in tail, (which, was his case,) *426 and Lord Kenyon in Porter and Bradley to speak of land given in fee simple, (which was the .case before him,) the opinions of both seem to be founded on just reason, and to be perfectly consistent. If Lord Kenyon had held the words to imply an indefinite failure of issue, he must have held that the testator’s son took only an estate tail; for it is perfectly, settled, that if land be given to A. and his heirs, and limited over on failure of the heirs of his body, A’s., estate will be restricted'to an estate tail. This would have been to destroy the plain, legal effect of the words giving a fee, in order to give an effect to- the words of limitation over (leaving issue), which is stated to be contrary to their natural and obvious import; thus defeating the expressed intention of the testator, when there is nothing in the* law to forbid his intention’s having effect. The cases since decided, which have been supposed to be in opposition to Porter and Bradley, do not appear to'me to be so. In Tenny vs. Agar, 12 East. 252, and Dansey vs. Griffiths, 4 Maule and Sel. 62, it was a matter of necessary construction, from the whole of the will, that the first taker had. only an estate tail, and therefore it was necessary that the limitation over on the event of not leaving issue, should be construed a remainder, and the words to; import an indefinite failure of’issue.
I conclude, therefore, that in England, under, the statute de donis, this will would give the testator’s sons an estate tail, with remainder in the case of each, to such of -his brothers as should survive him. As such remainder, the limitation would be good, and would have effect, unless barred by fine and-recovery. For the reasons mentioned, being limited after a fee conditional at common law,-it must take effect as a remainder, if at all: the death of the first tenant, without issue living, is no less a regular determination of a fee conditional, than of an estate tail, and the limitation over is expectant on that determination. I have heretofore taken for granted, from the authorities, that a remainder limited after a fee conditional, was void. This has recently been in some degree questioned in a learned publication, by Mr. Preston, on Estates. He admits, however, *427 p. 320, that “ by the preponderance of authority, no remainders are admissible after a gift of a conditional fee.”
The principal authority relied on by Preston is that quoted by him from Bracton, Lib. 11, c. 6. “Itempoterit pluribus fieri donatio, per modum simul et successive, ut si quis pilares habeat filios, et sic fecerit primogénito donationem et dicat,'Do. A. pri-mogénito meo filio tantaih terram, 6pc. habendum et tenendum sibi et hceredibus suis, de corpore suo procreatis, et si tales hceredes non habuerit, vel si habuerit et defacerint, tunc terram illam do B; Jileo meo post genito, et volo quod terra ad ipsum B. revertatur habendum et tenendum, sibi et hceredibus suis quos de corpore suo procreatos habuerit, et si nidios- tales ha-buerit, vel si habuerit et defecerint, tunc volo et concedo pro me et hceredibus meis, quodprcedicta terra revertatur 'ad C. tertium filium meum, habendum et tenendum sibi et hceredibus suis, quos de corpore suo procreatos habuerit, et sic de pluribus. Et si prcedicti A. B. C. sine talibus hceredibus de corpore suo pro-creatis decesserint, tunc volo quod prcedicta terra revertatur ad me et ad alios hceredes meos ; quod quidem filer et .sine expressions per tacitam conditionem, nisi donator aliud inde ordi-naret.” The other authorities cited in favor of such remainders, are Fleta, Lib. 3, c. 9, § 9, which Mr. Preston refers to without quoting; a doubt expressed by Lord Chief Justice Vaughan in. Gardener vs. Sheldon, Vaughan, 269, with respect to what is said by Lord Coke, 1 Inst. 18, that no remainder could be limited after a base or determinable fee; and some observations of Mr. Watkins on copy-holds, to show that, by the custom of some manors, copy-hold lands might he granted to a .man and the heirs of his body with remainder over. The last authority I have hot had an opportunity of. referring to, but so far as I can perceive, it does not seem to bear very strongly on the question.
With respect to the passage quoted from Bracton, it struck me that it might possibly admit an interpretation of this sort— that the qualified gift “donatio per modum” might be limited to several and the heirs of their bodies, successively, each taking *428 the same qualified estate, without having relation to the ultimate possibility of reverter. \As to the last limitation to the donor’s, right heirs, he says, “quod quidem fieret sine expressions, per tacitam conditionemthis would be the effect of the law, without any such limitation expressed in the grant. Lord Mansfield observes, in the case of Burgess vs. Wheate, 1 Bl. Rep. 177, that if in the grant of a feud, 'it were limited, to escheat to the Lord, after a failure of .heirs generally, this limitation would be good ; though it would be no more than what the law would operate. Yet, certainly a limitation to any one else, by way of remainder, after a general failure of heirs, would be bad. Though 'the expression, “nisi donator aliud inde or-dinaret,” might seem to imply that a different disposition might be made by the grantor, yet perhaps no certain conclusion can be drawn' from such an expression. What is said by Bracton, in the introduction to the same chapter, seems to favor this view of his meaning, “Donationum alia divisio, s. quod alia simplex et pura, alia conditionalis, alia sub modo, uni-facta vel pluribus successive.” It may be observed that the “donatio sub' modo” is what we now speak of as a fee conditional, where not only a condition is imposed, but the course of descent restricted. The “cohditionalis” to which he alludes, is the case- of a grant to a man and his heirs, if he shall have heir^ of his body; where, upon the performance of the condition, it becomes a fee simple absolute, and will descend to heirs generally. ■ To the same effect is the passage referred to in Fleta: “Item, pluribus fieri poterit donatio per modum filiis et successive: ut, Do A. filio meo primogénito tantam terram tenendam sibi et hceredibus suis, de corpore.suo progenitis; quisi tales sibi non genuerit, vel si habuerit et defecerint, tunc volo quod terra ilia ad B. filium meum post ncttum revertatur, tenendam sibi et propriis hceredibus suis, ut supra ; qui.si nidios-tales habuerit vel si habuerit et defecerint, tunc volo et concedo pro me et hceredibus meis quod prcedicta terra revertatur ad C. tertium filium meum, habendam et tenendam sibi et hceredibus suis, de corpora suo progenitis, et sic dé pluribus filiis, parentibus vel *429 extraneis.' Et si prcedicti A. B. C. sine hceredibus de corpori-bus suis progenitis discesserint, tunc volo quod pr adicta terra revertatur ad me et ad alios ' hceredes meos.” Fleta, Lib.'3, c. 9, § 9. It is true, that if several estates tail were now limited in succession, each, after the first, would be called a remainder; yet I can conceive, that before the statute, it may have been considered a peculiar case — a sort of substitution — not involving the power to limit the ultimate possibility, or fee absolute. I confess, however, that this seems contrary to the import of the authorities referred to.
This would, perhaps, be too uncertain speculation to found a conclusion upon; but I must consider myself bound by the later authorities, which are uniform, that no such remainder can be; limited. So it is repeatedly laid down by Lord Coke, (1 Inst. 18) that no remainder could be limited after a base or qualified fee. “There was no reversion or remainder expectant upon any estate tail at the common law, nor the issue in tail had any remedy.” 1 Inst. 327. And see reading on the statute de donis, 2 Inst. 335; 3 Rep. 4; 7 Rep. 35. It is true, that Lord Chief Justice Vaughan expresses a doubt as to what is said by Lord Coke, 1 Inst. 18, that no remainder can be limited after a qualified fee; but that doubt does not seem to have been regarded in subsequent decisions. Lord Hardwicke says, “no remainder could be created of any estate not within the stat. de donis; for before, it was a possibility of reverter, out of which a remainder could not be; Upon this notion, that being but a possibility, it could not be grantable over ; and if before the ■ statute de donis, a man had granted lands to another and the heirs of ; his body, and said, in default of such issue to B. and his heirs, that grant had been void.” Earl of Stafford vs. Buckley, 2 Ves. Sen. 180; Id. 335. So it is said by Lord Loughborough, in Turner vs. Turner, Amb. 782, “ by the common law, there is no possibility of limiting over such an estate.” ■ These are not dicta, but decisions, respecting annuities, which are heredita-ments, not included in the statute de donis, but remaining subject to the rules which governed fee simples conditional at the *430 common law. To these, may be added the authority of the author of Bacon’s abridgment in the introductory remarks to the chapter on estates. Mr. Preston supposes Chief Baron Gilbert to have been the writer of these remarks.
But if we admit that remainders may be created after á fee sim-pie conditional at common law, another que.stion arises; whether they may be barred by alienation after issue had. No doubt remainders after estates tail may be barred by fine and recovery, but the proceeding by-fine'and recovery has grown up since the statute. There is no direct authority to this .point, but it seems matter of obvious and necessary inference.. The donor’s right of reverter might be barred by alienation; the creation of a remainder is b,ut a grant of the reversion; if alienation will bar the donor himself, it seems to -follow that it will bar his grantee. Indeed, it is- perfectly settled, that any executory (or conditional limitation after an estate tail, may be barred by fine and recovery. See what is said by Fearne, 424, (Butler’s edition,) and the cases cited by him: It is for this reason that it has been said, as in argument in the case of Edgar and Driver, that there can be rio executory devise after an estate tail; as it is characteristic of an executory devise that it cannot be barred. A limitation may be made by will, which will so far partake-of the nature of an executory devise, that it may take place in abridgement of the preceding estate- — it will not be a remainder expectant on its determination: as if land were devised to A. and the heirs of his body, but provided, that if A. should fail to pay B. £.100, the land should go to B: and his heirs. This, is one of the cases cited by Fearne, in which 'the limitation over was held to be barred by fine and recovery, .though the condition was not complied with ; and such a limitation differs from an executory devise, not only, in this respect, but .another — that it is not restricted to .any limit of time. Land may be.devised to A. and the heirs male o"f his body, on condition that he and his descendants, tenants'of the estate, shall take and bear the name of the donor, with a limitation over in the event of breach of the condition. Such a limitation would be good, and might *431 take effect at any distance of time, but alienation by fine and recovery would bar it. From the analogy of the estates, I should infer that alienation after issue would bar any such executory or conditional limitation annexed to a fee simple conditional. It is said to be of the essence of an estate tail, that it may be barred by fine and recovery; it seems to have been no less of the essence of a fee simple conditional, that the tenant might alien after issue had.
In the present case, therefore, I conclude that the limitation to . the surviving sons of the testator, after giving them a fee simple conditional, must be construed a remainder limited on that estate; that such a remainder is void by law; that if it be not void, it may be barred by a conveyance ; that if it may be construed an executory limitation.or devise, from the analogy of law, it may still be barred, and consequently that it is in the power of complainant who has issue living, to make a good title to the land in question.
It is, therefore, ordered and decreed, that upon the complainant’s executing to the defendant a sufficient title to the land mentioned in the bill, the defendant accept such title, and pay the price stipulated to be paid for the same.
Note. — This case has been often referred to. See Adams vs. Chaplin, 1 Hill, Ch. 268 ; Edwards vs. Barksdale, 2 Hill, Ch. 187 ; Deas vs. Horry, ib. 247; Buist vs. Dawes, 4 Strob. Eq. 49.